Good morning, Your Honor. My name is Rex Heineke. I'm here on behalf of the plaintiff appellants, Mr. and Mrs. Jhaveri. I'd like to reserve a couple of minutes for rebuttal, if I could. Thank you so much. This case we submit presents an important question of California law. And the question is, may an alarm and patrol company essentially exonerate itself from any responsibility when it acts grossly negligently? We submit the answer to that question under California law must be no. And I'm sure the Court's aware from the briefs, the central case here is the City of Santa Barbara case decided by the California Supreme Court. In that case, the Court said that a school could not exonerate itself from liability by using a provision that said we have no liability for any kind of tortious act. And the Supreme Court said, no, that is against public policy. But wasn't that case a little different in that there was no contractual relationship? Yes, as I said. Well, there was a contractual relationship because the school provided services, but they weren't suing on the basis of the contract. They were suing. Well, the provision of services to the public generally doesn't constitute a contractual relationship, does it? No, no, they provided a service. All I'm saying is they provided a service to these parents in the City of Santa Barbara case. They were running a school, so there wasn't contractual relationships. I pay you, and you provide me services. They weren't suing on that. Was there a written contract? In that case, yes. There was. Right. There's a written contract, and in it, it had this provision that exonerated the school from any liability. And that's what the California Supreme Court invalidated. That was torts. The purported agreement would have or disclaimer would have disclaimed their liability for any torts. Yeah, disclaimer. Right. Right. And then what the court said was those kind of provisions that exonerate you from liability from your gross negligence are against public policy. For example, a doctor can't disclaim liability for malpractice even though there's a contractual relationship between the doctor and the patient. Right. What makes your case different? Well, we submit it's actually more the same than different. That is, we submit that the City of Santa Barbara controls here. And I think there's three things to look at in the City of Santa Barbara. You were suing in tort, weren't you? And contract. The contract, you're covered by the contractual limitation. Right. And we are contending that that contractual limitation under City of Santa Barbara is invalid as against public policy because it exonerates the defendant from liability from gross negligence. What tort duty did they have separate from their contractual obligations? They had the tort duty not to negligently hire the employee they hired that they sent to the Javaris home who had been convicted six months before a felony theft. Now, do I understand correctly, you sought to add that claim? Yes, Your Honor. It was not in the original complaint? Correct. Okay. I personally think you have a legitimate gripe about why you couldn't, you know, why you were denied permission to amend. Can you elaborate on that a little bit? What exactly would you have alleged? Well, I think if you look at the record, it's very set out, I think, in, you know, a great deal of detail. But essentially it was this, that ADT hired this gentleman who was working for them. He sent them twice to the Javaris home. He had been convicted of felony theft six months before he was sent out to the Javaris home. And the nature of the burglary at the Javaris home demonstrated that somebody knew how the ADT system worked, because they did not break directly into the house. What they did was they went to the first patio, they stacked up a bunch of furniture, and broke only through a window that did not have an alarm on it. They ended up, they climbed up on that, got to the second patio, stacked up more furniture, and broke into a bedroom window, again, that was not alarmed. They then went in and knew where the safe was, because it was hidden behind clothing, moved the clothes, and went to the safe. And when they went out, they did not go down the stairs, they did not go through any doorway, they climbed back out the same way, because somebody knew what was going on. That's the question, is the nexus between the ADT alarm technician, I mean, there obviously were others at ADT who were aware, the Ms. Washington, or whatever her name was, who wrote the contract for ADT, decided where all the systems were. Right, but our point is, we really have two points here. One is, we should have been allowed to amend. And we asked for the right to amend, and it was denied. And we asked again, and it was denied. And we asked for reconsideration, and it was denied again. Her logic in denying it was, well, you've got smoke, you don't have fire, basically, right? Yes, but this is a motion for judgment on the pleadings. We have surely alleged enough to have a cause of action. Can we prove it? Well, obviously, maybe we'll lose it, summary judgment, or maybe we lose a trial. But that's not the question. The question here is, are we allowed to proceed and mission conduct discovery on these issues? And that's, on the amendment, that's what we submit as wrong. I guess what I want to hear, though, is, okay, you would allege in the complaint that the technician had a prior felony conviction for theft, and that he was in the house twice, and therefore knew the layout of the alarm system, and it was an inside job. Somebody had to have known all that. Right. Do you have anything else that you can allege with regard to this technician, in terms of his complicity in the burglary? Not right now. I take it, as far as we know, nobody's been convicted or arrested for the crime? Not as far as we're aware. And then I guess I have the same question with regard to, you wanted to add the patrol officer. And I'm curious as to why you didn't add him at the initial pleading stage, when you filed your original complaint. You clearly knew that he'd been to the house and did a negligent job of inspecting the exterior. But liability against him, as such, is not important to us, because ADT's going to be responsible for gross negligence on his part, as their employee. And really, as to that person, you are. I guess what I don't know, from the state of the pleadings, is the time record shows that he wasn't even dispatched to get the alarm for more than an hour. So, assuming that there was a burglary, and burglars are long gone, aren't they, by the time he arrives on the scene? I mean, this isn't a burglary that's going to take three hours to complete. But apparently they were gone because he filed a report saying he didn't see any sign of anything, even though... Well, it's pretty clear to me he didn't get out of his car, other than to get to the mailbox to put his report in. Right, he was there like three minutes. Yeah. Right. But that, in our estimation, would constitute gross negligence. Why? Why is that gross negligence, for him to just sit in his car and look to see if there were any obvious signs of break-in? Because the signs of break-in were so obvious that anybody who bothered to look would have seen them. Were obvious from someone who... He was supposed to at least, he said he walked around the perimeter, he looked at the outside of the house. If he looked at the outside of the house, furniture was stacked up and there were twice What's the tort duty that he owed your client? The tort duty, we say, is they negligently hired these people who didn't properly perform. That's the new claim you want to bring up, not the claim you originally brought. Correct. And our other claim is breach of contract, that they didn't perform the contract appropriately. First, the things I've already said, but also they waited a whole hour to dispatch the car. They did not call our clients, as they were obliged to do. And when the person did the investigation, where he probably didn't even get out of the car, that wasn't any kind of adequate investigation. So that brings me back to the city of Santa Barbara case. And in that case, there was an application to participate in city services. There was not a contract with the payment, specific payment for services rendered, as in this case. And so, in this case, your clients paid for the services, so the contract was actually for the services. Why isn't this just a typical breach of contract case, because you paid for a particular service and that service was not performed? Well, that's one of our claims. Why isn't that it? City of Santa Barbara doesn't necessarily get you there, because that was not a typical contract, where it's bargained for and a price is paid for ongoing services with contractual provisions. So to me, city of Santa Barbara is not necessarily like this case. Well, it's not exactly like this case, but what it's like is the public policy. And the public policy that was adopted in city of Santa Barbara was you cannot exonerate yourself from liability from gross negligence in California. That California wants to discourage gross negligence. And if you look around the country, there are several cases now, including New York's highest court, and the Court of Appeals in Washington State, and the Court of Appeals in Louisiana, who have all adopted our argument. And indeed, in city of Santa Barbara, the California Supreme Court cites the Washington case, because in city of Santa Barbara, the court talks about a case called Continental Insurance. And Continental Insurance squarely supports ADT. And in city of Santa Barbara, the court criticizes Continental Insurance. It says we're not deciding this issue, but it criticizes that case. It then goes on to say, in response to that case, it cites to the Washington State case. Why would it cite to that case, which supports us, unless it thought that it proved something? But most fundamentally, why should the policy be that a party in a form contract can agree, have you sign it, say this is it, take it or leave it form, adhesion contract, you are giving up any right to sue for gross negligence. I'm sorry? It's not an adhesion contract. There was additional protection that the Javaris could have paid for, which was offered by ADT. I don't know what it consisted of, but they didn't pay the extra money for that. But that was available to them. Right. And first place record doesn't show what that would have been or what it cost or what you could get for it. So I don't think it shows much of anything. Well, we don't know. Well, right. But it's different from a contract of adhesion of take it or leave it. I mean, I suppose that a homeowner could look at the terms of the ADT contract and say, you know, I'm going with one of ADT's competitors. All of them have these provisions. That's why there are all these cases out there like this. They want no liability. But I think the concern Judge Rawlinson has identified is the legitimate one. I mean, Santa Barbara is clearly a straight tort case. True. A breach of the duty to properly supervise the disabled child in the swimming pool. But here we have a contractual relationship where the payment was whatever the amount was per month, say $30 or $50 or $100 for alarm monitoring services. And for that, you get phone calls and you get a patrolman who comes after the alarm is tripped. Well, but they're supposed to do things like inform you the alarm was tripped. Which they didn't do. Which is their contractual duty. Right. But then the quest, right. And they say, well, you're limited to $1,500. And we say that provision is against public policy in California because it exempts them. Even on your breach of contract claim? Yes. Because it exempts them from liability for the gross negligence. Even if you're right about that, we don't have any California case squarely saying that, right? No. City of Santa Barbara says this is an open issue in California. Well, it's right. Shouldn't, you mean, if we are, sorry, by your premise, wouldn't we have to certify the question of this unique question of California law to the California Supreme Court? I can understand why the court would do it. There's no federal interest here in this issue. Not that there's no federal interest, but if we accept your argument that California Supreme Court has not ruled that way in a classic contract case or a breach of contract cause of action, California Supreme Court has not extended City of Santa Barbara to the facts of this case. It has not. But if you read it, it criticizes the case that's against us, the Continental Insurance case. Well, is there a difference between, they didn't completely exclude liability. They limited the damages to $1,500. Right. But effectively, I mean, what if you had a contract that said it was $1? I mean, the fact of the matter is it's a practical thing, $1,500, there's no. It might be sufficient if you didn't store millions of dollars worth of cash and jewelry in your house. There are a few people I know who don't have more than $1,500 worth of goods in their home or apartment. It doesn't really matter, though, because they're not insurers in any event. I agree they're not insurers, and we're not saying they're insurers, because insurers protect against negligence. And we're not claiming that we have any right to recover on a negligence theory. What we are saying is we have a right to recover because of their gross negligence. I see you're down to about 20 seconds. Thank you. Thank you. Good morning. Good morning. May it please the Court. I'll pick up with the issue. Can you repeat your name for the record, please? Charlie Epplin for Defendant ADT. Thank you. Epplin in this case. I'll pick up with the issue of California law and the question of certification and why that's not necessary, because there is, in fact, clear California precedent addressing this exact issue. And City of Santa Barbara itself distinguished the facts and circumstances before it from that other body of law. All of this in California originates from civil codes, which the legislature has made policy decisions on. And there's a different code for liquidated damages provisions, which is how it has treated the traditional contract provisions in the alarm cases under 1671 versus releases from liability in the more traditional port context like they had in City of Santa Barbara. And that's precisely the distinction that this court drew two years ago in the Valenzuela opinion, is that there is a 50 to 70-year history under 1671, which is still good law, that has always correctly addressed how we deal with these liquidated damages provisions in these types of contracts and others. And that goes back to the Better Foods and Atkinson cases from the 1950s, and those weren't touched at all by Santa Barbara. In fact, how can you explain, you know, they cite the majority rule in the Santa Barbara opinion, and then they list cases from other jurisdictions, one of which is the Nebraska 1994 Supreme Court decision in Fire Alarm Services, New Light Company, Inc., versus Wells Fargo Alarm Services. I mean, isn't that the same case as this one, seeking? It's not, and the reason for that is twofold. One is there's the statutory difference that's been recognized, and I think that's important, because the California Supreme Court, consistent with the statutes, has always treated the liquidated damages provisions differently than it has full releases of liability that apply to tort claims, which is what it did in Santa Barbara, and it recognized that's what it was doing. That's why it distinguished the Continental case and said, we're not reevaluating this body of law under 1671. It deals with liquidated damages provisions, so it expressly said, we're not extending our holding to this. Now, how do you explain their citation to the Washington Court of Appeals decision, which involves an alarm company, and which holds in Washington that you can't exclude liability for gross damage? True, and I think that was in a footnote. They said, this is distinct from what was reached in Continental, and we're not addressing that. What I will say, and this is consistent with California law, too, Your Honor, is going back to the Fireman's Fund case, which is, I think, a 1978 decision under the same body of law dealing with liquidated damages provisions. That case said, if you have a valid gross negligence claim, a liquidated damages provision likely wouldn't apply to that either. So that is the majority rule, and that's the rule in California, but what it said is, you have to have a valid tort claim, and this isn't a tort case, and Fireman's Fund also said, under Better Foods, which was the seminal 1950s California Supreme Court case, you don't have a tort claim here, you just have a breach of contract, and as against breach of contract claims, these provisions pass muster by statute and by interpretive law. Would those provisions apply to a claim for negligent hiring? I think they would, Your Honor. Why? I don't know that we, I don't, from the cases we have, I haven't seen a cause of action in which that type of provision was applied. So nothing post-Santa Barbara? In relation to what? Negligent hiring or just any kind of? No liquidated damages provision. We don't have any alarm company cases. Not out of California State Court. We do have several federal court decisions which are cited. You've got Valenzuela, which was a published district court opinion affirmed by this court two years ago, and then of course you have Judge Wynn's opinion which synthesized California law as it sat. To Judge Rawlinson's question, I haven't seen a California case where a liquidated damage provision under 1671 was assessed as against a negligent hiring supervision, but the logic as to why it would still apply to that kind of cause of action is similar as it is to the other cause of action. Why? I don't understand that. Why is that? Because the baseline of what we're dealing with here is whether or not people properly performed their job. At bottom, for the allegations that were in the complaint. See, that's part of it. But they say, but in addition, we have reason to believe that they sent a known thief to our house. That's different. I agree with that. That is a different claim. Okay, so why can't he try to make as much hay out of that as he can? Why can't he amend the complaint? And if he can prove it, fine. If he can't, he can't. To the amendment issue, there's three reasons why the trial judge, Judge Wynn, didn't abuse her discretion in denying amendment. And you kind of have to scrutinize, I think you have to start with the history of what happened. The first baseline admitted fact, which ties into her basis for denying amendment, is it's conceded that the plaintiffs, whether they're accurate or otherwise, knew at the time of filing the first complaint that they thought they had a theory that somebody was complicit in the burglary. So they don't allege it in the first instance. They wait and assert a claim against Brigand, who's the patrol guy who went out and they try and draw the inference that he was involved in a conspiracy just based on his performance on the site. They bring that in their proposed amended complaint. That's the amendment they seek. They seek to add him as a party and add allegations against him. The judge, applying the standard that you would apply, not only for amendment, but the joinder would cause a remand, properly assessed that proposed amendment and said that based on Twombly and Iqbal, those allegations are insufficient. It's speculative conspiracy theory to draw an inference from the fact that somebody arguably did a bad job patrolling. Well, this is either a perfect storm of negligence on the part of ADT or it's an inside job. I mean, if you look at the totality of what happened here, the fact that the notification provisions were changed in the Javari account, the fact that for inexplainable reasons, the ADT alarm center operator never made the call to the local Palos Verdes police station. I mean, it's just a host of facts that really do make it look like it was not a coincidence that all these bad things happened simultaneously. I understand those allegations, but I think the question, the focal question as it relates to those allegations is as to the amendment issue. And specifically, the amendment issue as to- But if they can allege all that now, why don't they have a, at least on the pleadings, a viable claim for a civil conspiracy to commit an intentional tort, i.e. set the homeowner up for the perfect burglary? For several reasons. The first reason is the one that Judge Wynn found, which was there were elements of a cause of action for negligent hiring and supervision, which was their predicate claim for the conspiracy theory to attach to ADT, that were altogether missing. That was one of the bases that came up in the reconsideration order, that she said was a valid basis to deny the amendment as to the second theory against Mr. Vasquez, which is the one I understand as being appealed, not the Brigham amendment, which was the only formal amendment in this case. Secondly, then at the time when she denies it, so you've got the futility issue because they did not assert elements of the cause of action, even in boilerplate fashion. Well, the futility issue is if no claim could credibly be made, not what was actually made, but whether or not a claim could be made. So is it your position that it would be futile to allow further attempted amendments because no claim can be stated against the company? Well, we agree with the district judge's analysis on that. And so, yes, that is our position for two reasons. One is that, as she observed, there was no allegation of a connection to ADT's knowledge or what ADT should have known about certain characteristics of an employee. Secondly, as Judge Wynn concluded at the first proposed amendment, the actual formal proposed amended complaint, under Twombly and Iqbal, it was too speculative to draw an inference of a conspiracy and a burglary based on the fact that somebody didn't do their job well, or in the case of Mr. Vasquez, if we assume that he had some sort of criminal record, which we don't think the record would support, but that's not where we're at. That's too big of an inferential leap to say, which is what the Travis Court is saying. I'm sorry, are you challenging the factual assertion that he's a previously convicted felon? Well, we certainly would if it were part of the amended complaint. We didn't address that issue, because that wasn't part of it. We're at the pleading stage, and it seems to me that we have to accept that allegation. We would have to accept that allegation as true. That's true. And there was obviously negligence in the background investigation, unless ADT is in the habit of hiring convicted felons, which I seriously doubt, for alarm company duties. But it just seems to me, as Judge Rawlinson points out, no conceivable cause of action on the basis of all of these assertions, starting with the hiring of known felons, sending them in to wire the alarm system, the inside job, the changing of the account contacts, the delay in reporting, not making the call to the police. I mean, as I say, a perfect storm or inside job. We don't think that the trial court erred in her conclusion that as they had pled those facts and alleged them, it was too big of an inferential leap to get to the conclusion that somebody participated in the burglary based on the facts that they alleged. Because that's what they alleged, somebody from ADT participated in the burglary. And on the futility issue, that was the district court's conclusion as to why. But I'm sort of wondering if she's holding it to a tougher standard of proof that this isn't even the motion to dismiss stage. This is a motion to bring a complaint stage. I mean, maybe they've got the goods, maybe they don't. But it's not like they're just inventing fanciful theories out of nothing. They've got all these facts that Judge Tomlin marshaled here. Makes you wonder, you know, why isn't that enough to at least get their foot in the door? I understand that position, Your Honor. And I think that the district judge properly executed her role. Okay, I know you think that. But, I mean, if we review this de novo, convince us that he doesn't have enough. Sure. And the other issue is it's an abuse of discretion standard as to the factors that apply in her decision to rule on the judgment on the pleadings. And then in the course of the briefing on judgment of the pleadings and after the fact, which is when you get clear argument from the plaintiffs that we want to amend to add, not the Brigham theory that was denied formally, but in the motion for judgment on the pleadings briefing, and after that was decided, is when you finally get articulated the theory of we want to actually add this different claim against Mr. Vasquez. Okay, so they should have maybe dreamt this up a little sooner. But, you know, when they came up with it. And that's true, Your Honor. But that is very important because of the timing and the way in which they presented it under the abuse of discretion standard and the case law that we have cited, the Andrews case, the Lockheed case, and all of the factors that are to be considered by this court as to whether or not Judge Wynn abused her discretion, at that point in time in denying amendment through an informal procedure like it was raised in substantive briefing, you have several factors within that that support her decision. One is, like the Andrews case, like the Lockheed case, like the Chodos case, you're past the scheduling order and the deadline to amend by about a month at the MJOPP briefing. When they bring it up again, it's eight or nine months later. So you're well past the scheduling order deadline, which this court has said is a heavy factor to be considered on the abuse of discretion standard. Secondly, and this ties in with that factor and really strengthens her discretion, is they knew about the alleged facts that they thought constituted this conspiracy theory or negligent hiring claim back when they filed the initial complaint. Well, they didn't know about the conviction, did they? Because they didn't know the name of the installer. Well, they did. They had the facts. In fact, in the, I think it's a July proposed Rule 16 planning report, that investigation and the fact that they think that they've got information about a certain installer is included in there. So it's sort of like they wanted to try different theories to see which ones worked with the district court, and then as it went along and they lost those theories, they were holding cards in their hip pocket. Well, that's why you amend. That's why there's a rule that permits amendment. They get a little smarter as they go along. But the issue there under this court's law under rules believed to amend in the abuse of discretion standard is once you allow a scheduling order deadline to pass, the judge's discretion to deny amendment goes up, and it goes up even more when you concede that you had the facts that you needed to allege that beforehand. Counsel, what about our cases that say leave to amend should be liberally granted? What do you do with that line of cases? I understand that that is the baseline rule. But I think what's more particularly important in this case is that you do have three or four cases that deal with the scenario of the judge's inherent ability to regulate its scheduling order, and the case law says that is not a hollow piece of paper, it matters. And then when you couple that with the fact that there's no question these allegations could have been made sooner, could have been made before the deadline for leave to amend, could have been made before. But many parties will be out of court without an opportunity to have their case heard. Do you don't think that our cases stress cases being heard on the merits as opposed to being knocked out on pleading technicality? Your Honor, I understand that that is a policy consideration inherent in Rule 15 and in the federal rules. But there are also a whole other host of factors, and under the abuse of discretion standard here, and the facts of this case, and the three or four cases that I've cited, Judge Winn did not abuse her discretion under these facts in denying the amendment. Okay. Mr. Evelyn, I have one last question. Yes, Your Honor. As I understand the independent duty rule, it applies to causes of action. Do you have any cases applying it, as you are urging us here, to an attempt to negate an affirmative defense? It does apply to causes of action, but what I would point Your Honor back to is the Better Foods decision and the Fireman's Fund case, which specifically in Fireman's Fund, they rejected this argument that you could untether a gross negligence theory from having gross negligence or having a negligence-based theory as part of your claim. The California Appeals Court in that case said, yes, as against a claim for gross negligence in this 1671 context, you might not be able to apply a liquidated damages provision. But that claim already failed for want of any legal duty. Therefore, we reject your argument. Thank you, Mr. Ripper. Thank you. I realize I'm virtually out of time, but if I could say just a couple quick things. In response to Judge Tallman's question, I'd refer the court to City of Santa Barbara and footnote 58, where the court squarely says that it's the defendant who's raising the contractual provision that exonerates them that has to show there was no gross negligence. The court then concludes, but this we believe, that is doing that, is different from recognizing a separate cause of action for gross negligence. The trial court here said we had to show and had to plead gross negligence. That's not correct under City of Santa Barbara. The defendant has the burden of sustaining the exoneration of liability. And as part of that burden, they have to show that they were not grossly negligent. Opposing counsel relies on Valenzuela, a case decided two years ago by this court. It is not controlling because it's unpublished. I think that's undisputed. And we submit that it's reasoning can't control here because it says not one word about City of Santa Barbara. This, the defendant now says liquidated damages bars us. They never raised that below, and I submit it's way. Second, if you look at other cases that have considered this, the Morris case, and applying California law, and the Abacus case admittedly applying New York law, they reject that very argument. And finally, under California law, to apply a liquidated damages provision, the parties have to actually come up with a number. They have to sit down and say, this is a reasonable number. What about an argument that you blew the deadline for amendment? We didn't. We made our first motion for amendment before that deadline. And it was denied. What opposing counsel does is he characterizes it. But you brought up this Vasquez character. We brought it up there. No, we brought it up there. Beforehand. Before the deadline. In our first attempt to amend. Now, it is true that the focus of that motion to amend was about this other employee, Bergen. But there were other allegations in there, the allegations that we've discussed today. And the court did not give us leave to amend. So why didn't you seek to add Vasquez as a named defendant? If your theory is that he was involved in the burglar? No money. I mean, it's a practical matter. Why, do you think Bergen has lots of money? No, that was, we were trying to defeat removal. Okay. All right. Thank you so much. The case is starting to submit. Good morning.
judges: Silverman, Tallman, Rawlinson